**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMBER STRIPLIN, individually and as representative of a class of similarly situated persons, and on behalf of STIFEL FINANCIAL PROFIT SHARING 401(K) PLAN, | ) ) ) ) ) | |
| | ) | Case No. 4:26-cv-255 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STIFEL FINANCIAL CORP., THE BOARD OF DIRECTORS OF STIFEL FINANCIAL CORP. and its members, STIFEL FINANCIAL PROFIT SHARING PLAN 401(K) INVESTMENT COMMITTEE and its members, and DOES 1-20 and DOES 21-40, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

i

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL ALLEGATIONS .................................................................................. 3

III.  ARGUMENT .......................................................................................................... 4

      A.    Standard of Review.......................................................................................... 4

      B.    Plaintiff's Lawsuit Must Be Dismissed Due To Claim Splitting and/or the
            First-Filed Rule. ............................................................................................. 6

      C.    Plaintiff Fails to State Any Plausible Imprudent Investment Claims. .................... 8

            1.    Plaintiff Admits She Does Not Definitively Know The Performance
                  of The Challenged Funds So As To Be Able To Plausibly Allege
                  Underperformance. ................................................................................ 8

            2.    Plaintiff Fails to Allege Facts Demonstrating the Comparator Funds
                  Were Meaningful Benchmarks. ................................................................ 8

            3.    Insubstantial and Inconsistent Performance Differences Across
                  Different Years Are Not Enough to State a Plausible
                  Imprudence Claim................................................................................ 13

      D.    Plaintiff Fails to State Any Plausible Failure-To-Monitor Claims. ...................... 18

IV.   CONCLUSION...................................................................................................... 18

i

## **TABLE OF AUTHORITIES**

**Cases**                                                                   **Page(s)**

*Abel v. CMFG Life Ins. Co.*,
No. 22-cv-449, 2024 WL 307489 (W.D. Wis. Jan. 26, 2024)......................................11, 15, 16

*Allen v. Wells Fargo & Co.*,
967 F.3d 767 (8th Cir. 2020) .....................................................................................................18

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
137 F.4th 1015 (9th Cir. 2025) ....................................................................................................6

*Antoine v. Marsh & McLennan Cos. Inc.*,
No. 22-6637, 2023 WL 6386005 (S.D.N.Y. Sept. 30, 2023) ....................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009)..............................................................................................................5

*Barrett v. O'Reilly Auto., Inc.*,
112 F.4th 1135 (8th Cir. 2024) .........................................................................................3, 5, 18

*Batt v. 3M Co.*,
No. 25-CV-3149, 2026 WL 674322 (D. Minn. Mar. 10, 2026) ...........................................9, 12

*Becerra v. Target Corp.*,
No. 25-cv-535, 2025 WL 3022546 (D. Minn. Oct. 29, 2025)......................................................7

*Bekker v. Neuberger Berman Grp. LLC*,
No. 16 CV 6123, 2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018) ..............................................14

*Beldock v. Microsoft Corp.*,
No. 22-1082, 2023 WL 3058016 (W.D. Wash. Apr. 24, 2023) .................................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................................................................5

*Bracalente v. Cisco Sys., Inc.*,
No. 5:22-cv-04417, 2023 WL 5184138 (N.D. Cal. Aug. 11, 2023).........................................18

*Cho v. Prudential Ins. Co. of Am.*,
No. 19-19886, 2021 WL 4438186 (D.N.J. Sept. 27, 2021)................................................15, 18

*Davis v. Salesforce.com, Inc.*,
No. 21-15867, 2022 WL 1055557 (9th Cir. Apr. 8, 2022)........................................................11

*Davis v. Washington University*,
960 F.3d 478 (8th Cir. 2020) ........................................................................4, 10, 12, 13

*Eibensteiner v. EssilorLuxottica USA, Inc.*,
No. 25-2443, 2026 WL 1140895 (N.D. Tex. Apr. 27, 2026) ......................................9

*Enstrom v. SAS Inst.*,
No. 5:24-CV-105, 2025 WL 685219 (E.D.N.C. Mar. 3, 2025).................................15

*Forman v. TriHealth, Inc.*,
563 F. Supp. 3d 753 (S.D. Ohio 2021), *aff'd in relevant part*,
40 F.4th 443 (6th Cir. 2022) .................................................................................3, 14

*Fritton v. Taylor Corp.*,
No. 22-415, 2023 WL 5348834 (D. Minn Aug. 21, 2023).................................14, 17

*Gonzalez v. Northwell Health, Inc.*,
632 F. Supp. 3d 148 (E.D.N.Y. 2022) ......................................................................14

*Hall v. Cap. One Fin. Corp.*,
No. 22-00857, 2023 WL 2333304 (E.D. Va. Mar. 1, 2023).................................16, 18

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022)......................................................................................................6

*Kezhaya v. City of Belle Plaine, Minnesota*,
78 F.4th 1045 (8th Cir. 2023) ......................................................................................6

*Lewis v. Tiger Eye Pizza, LLC*,
No. 20-cv-4017, 2020 WL 6298075 (W.D. Ark. Oct. 27, 2020).................................7

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985)......................................................................................................6

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023) ....................................................................................6

*Matousek v. MidAmerican Energy Co.*,
51 F.4th 274 (8th Cir. 2022) ............................................................................ *passim*

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ........................................................................... *passim*

*Mosley v. Hydrostatic Oil Tools, Inc.*,
No. 20-cv-1040, 2021 WL 3134917 (W.D. Ark. July 23, 2021).................................7

*Muhammad v. State Farm Indemnity Co.*,
719 F. Supp. 3d 397 (D.N.J. 2024)..............................................................................7

*Northwest Airlines, Inc. v. Am. Airlines, Inc.*,
   989 F.2d 1002 (8th Cir. 1993) ....................................................................................7

*Parmer v. Land O'Lakes, Inc.*,
   518 F. Supp. 3d 1293 (D. Minn 2021) ....................................................................9, 11

*Patterson v. Morgan Stanley*,
   No. 16-6568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ........................................17

*Riley v. Olin Corp.*,
   No. 21-01328, 2022 WL 2208953 (E.D. Mo. June 21, 2022) ...................................17

*Roth v. Sawyer-Cleator Lumber Co.*,
   16 F.3d 915 (8th Cir. 1994) .....................................................................................16

*Sacerdote v. N.Y. Univ.*,
   328 F. Supp. 3d 273 (S.D.N.Y. 2018), *aff'd in relevant part*,
   9 F.4th 95 (2d Cir. 2021) ........................................................................................11

*Schave v. CentraCare Health Sys.*,
   No. 22-1555, 2023 WL 1071606 (D. Minn. Jan. 27, 2023).......................................10

*Smith v. CommonSpirit Health*,
   37 F.4th 1160 (6th Cir. 2022) ...............................................................................6, 18

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.
   Morgan Stanley Inv. Mgmt.*,
   712 F.3d 705 (2d Cir. 2013)...........................................................................5, 6, 16

*Tussey v. ABB, Inc.*,
   746 F.3d 327 (8th Cir. 2014) ...................................................................................16

*Twombly v. Bell Atl. Corp.*,
   313 F. Supp. 2d 174 (S.D.N.Y. 2003)........................................................................5

*Williams v. Centene Corp.*,
   No. 22-00216, 2023 WL 2755544 (E.D. Mo. Mar. 31, 2023)...................................17

*Yancey v. State Farm Mut. Automobile Ins. Co.*,
   No. 23-377, 2023 WL 5019769 (E.D. Mo. Aug. 7, 2023)........................................7

**Statutes**

ERISA Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) ...................................................5

ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2) ......................................................6, 7

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................1, 3, 4, 5

*Dell, et al. v. Stifel Financial Corp.*,
   No. 4:25-cv-00993, Dkt. 1, Complaint, Dkt. 26, Amended Complaint (E.D.
   Mo.)..................................................................................................................................7

*Fritton v. Taylor Corp.*, No. 22-415, Dkt. 50, Amended Complaint (D. Minn) ...........................14

## I.    <u>INTRODUCTION</u>

Plaintiff Amber Striplin is a participant in the Stifel Financial Profit Sharing 401(k) Plan (the "Plan") who claims that Stifel Financial Corporation, the Stifel Plan Investment Committee and the Board of Directors of Stifel Financial Corporation breached their fiduciary duty of prudence under the Employee Retirement Income Security Act of 1974 ("ERISA") by failing to remove two Plan investment options: American Century Large Cap Growth ("American Century fund") and Artisan Mid-Cap Growth ("Artisan fund"). Plaintiff also claims that all the Defendants breached their fiduciary duties to monitor the performance of all other fiduciaries with respect to these Plan investments.  Because there was another, earlier-filed action involving the same parties and claims, these claims should be dismissed as they are barred by the claim splitting and first-filed doctrines.  In addition, neither of these claims has been plausibly pled, and both should be dismissed for that reason as well under Rule 12(b)(6).

ERISA's fiduciary duty of prudence is rooted in the decision-making process, not results. *See, e.g.*, *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022) ("[a] plaintiff typically clears the pleading bar by alleging enough facts to 'infer . . . that the process was flawed.'"). Where, as here, the Amended Complaint is devoid of any facts about the Committee's fiduciary process for overseeing the Plan's investment options, a plaintiff must allege sufficient facts from which a court can infer a flawed fiduciary process at the Rule 12 stage. Plaintiff has not done so.

Plaintiff admits she does not know "the specifics of the Stifel Defendants' decision-making process with respect to the Plan, including the Stifel Defendants' processes for monitoring and removing Plan investments." Am. Compl. ¶ 47. She also admits that she does not know for sure that the performance information she is relying on for the American Century fund and Artisan fund are the same as those in the variable annuity contracts actually offered by the Plan. Am. Compl.

1

¶¶ 14, 33 (suggesting that the performance information published by Morningstar regarding the American Century and Artisan funds is, if not the same as those in the Plan variable annuity contracts, at least "a representative proxy").  Yet she asks the Court to infer Defendants acted imprudently by failing to remove the American Century fund and the Artisan fund based only on the fact that certain variable annuity contracts offered by American Century and Artisan *that may not be the same as those offered by the Plan* did not perform as well as certain indices and other cherry-picked funds Plaintiff selected as comparators for certain periods.  Plaintiff's speculation is plainly insufficient to raise an inference of imprudence.

And even if Plaintiff definitively knew the performance of the challenged investments, underperformance alone is insufficient to state a claim for imprudence. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) ("No authority requires a fiduciary to pick the best performing fund"). The Amended Complaint fails to allege that the American Century or Artisan funds underperformed relative to *meaningful* benchmarks, as required by the Eighth Circuit to survive dismissal. *See, e.g.*, *Matousek*, 51 F.4th at 278 ("The key to nudging an inference of imprudence from possible to plausible is providing 'a sound basis for comparison—a meaningful benchmark' —not just alleging that 'costs are too high, or returns are too low'"). Here, Plaintiff's conclusory allegations about the comparator funds are not sufficient to show that the funds she cherry-picked are meaningful benchmarks.

Plaintiff also cannot show the requisite magnitude or consistent discrepancy in performance against her proffered comparators sufficient to survive dismissal. Plaintiff admits that during the relevant period (March 1, 2020- January 31, 2026), there were a number of years that the American Century and Artisan funds outperformed the proffered comparators. And although she claims that Defendants should have known the American Century and Artisan funds were

2

imprudent *by the beginning of the class period in March 2020,* Am. Compl. ¶¶ 44, 232, 264, 275, their annualized underperformance against the proffered fund comparators over the six-year period prior to March 2020 (i.e., January 2014-February 2020) was less than 2% percent in every instance. Such differences do not warrant an inference of imprudence. *See, e.g., Forman v. TriHealth, Inc.*, 563 F. Supp. 3d 753, 757, 764 (S.D. Ohio 2021) (annualized three-year performance difference of "just over two percentage points" was "simply too small to raise a plausible breach of the fiduciary duty claim"), *aff'd in relevant part*, 40 F.4th 443, 449 (6th Cir. 2022).

Lastly, Plaintiff's failure to monitor claim is derivative, and where, as here, Plaintiff has failed to state an imprudence claim, such claims fail, too. For all these reasons, as set forth more fully below, the Amended Complaint must be dismissed.

## II.    **FACTUAL ALLEGATIONS**[1]

The Plan is an employer-sponsored, participant-directed defined contribution plan that offers participants approximately 25 different retirement investment options, including separately managed accounts, domestic equity funds, international equity funds, fixed income funds and a company stock fund, plus a self-directed brokerage account, for their retirement investing. Am. Compl. ¶ 64; Exhibit 1, 2024 Plan Form 5500, Sch. H line 4(i) (reflecting investment options).

Plaintiff challenges the performance of two investments in the Plan: the American Century fund, and the Artisan fund, which were added to the Plan in 2014. Am. Compl. ¶ 11, 30. Both are separately managed accounts (also known as separate accounts) and made available in the Plan under a group variable annuity contract issued by Empower Annuity Insurance Company of

---

[1] The facts are taken from the Amended Complaint, the Form 5500s and fund fact sheets or prospectuses for the challenged funds and comparators. Such information is properly considered when evaluating the sufficiency of the Amended Complaint's allegations under Rule 12(b)(6). *See, e.g., Meiners*, 898 F.3d at 823 (holding it was appropriate for district court to consider fund prospectuses on motion to dismiss); *Barrett v. O'Reilly Auto., Inc.*, 112 F.4th 1135, 1139 (8th Cir. 2024) (Forms 5500 are "'embraced by the pleadings' and can be considered on a motion to dismiss").

America. Am. Compl. ¶¶ 10, 11, 30; *see also* Exs. 2 and 3 (American Century and Artisan fund 1Q 2026 reports showing they are separate accounts). Empower administers these funds and offers them through variable annuity contracts, meaning that their value can be paid out as guaranteed lifetime annuities. Am. Compl. ¶¶ 10, 11, 30, 72, 84; *Davis v. Washington University,* 960 F.3d 478, 485 (8th Cir. 2020) (funds offered through variable annuity contracts "can provide a steady stream of income at retirement.").

Plaintiff alleges there are certain funds in the marketplace that, at various points in time over the 12 years preceding the filing of the Amended Complaint, had superior performance to the Empower Insurance Plus-Large Cap Growth/American Century variable annuity (such as the JPMorgan Large Cap Growth fund, Fidelity Blue Chip Growth fund, Alger Focus Equity fund and Vanguard Russell 1000 Growth Index fund), and the Empower Insurance Plus-Mid-Cap Growth/Artisan variable annuity (such as the T. Rowe Price Diversified Mid-Cap Growth I fund, Virtus Silvant Mid-Cap Growth fund, Invesco Discovery Mid-Cap Growth fund, Fidelity Mid-Cap Growth Index, and Baron Focused Growth Fund). *See* Am. Compl. ¶¶ 242-273. Unlike the American Century fund and Artisan fund, several of these funds are passively managed, meaning that their portfolio is designed to track a particular index so that there are no ongoing investment decisions for fund managers, in contrast to actively managed funds where managers are constantly making decisions about the portfolio of investments. *See* Am. Compl. ¶¶ 73, 81, 159, 213.

## III.   <u>ARGUMENT</u>

### A.   **Standard of Review**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Meiners*, 898 F.3d at 821. "If the pled facts are merely consistent with liable acts, the complaint 'stops short of the line

between possibility and plausibility.'" *Id.* at 822 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To state a claim for breach of ERISA's duty of prudence, Plaintiff must offer well-pled factual allegations showing that Stifel failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The focus of the inquiry is on the fiduciary's *process*, rather than the results. *See, e.g.*, *Matousek*, 51 F.4th at 278; *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 716 (2d Cir. 2013) (the duty of prudence standard focuses "on a fiduciary's conduct in arriving at an investment decision, not on its results"). Where, as here, Plaintiff does not make any factual allegations regarding process, she must plead facts sufficient to lead to an inference that the fiduciary process was imprudent. *See, e.g.*, *Barrett*, 112 F.4th at 1138. This is not accomplished by simply pointing to other funds with better performance. *See id.*; *Matousek*, 51 F.4th at 278-81; *Meiners*, 898 F.3d at 823-24.

Merely including charts and numbers in a complaint does not mean that a pleading contains sufficient facts to avoid dismissal. After all, the complaint at issue in the Supreme Court's seminal decision on the Rule 12(b)(6) standard—*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)— included color-coded maps of various territories "which evidence[d] the degree to which the defendants operate in separate markets." *Twombly v. Bell Atl. Corp.*, 313 F. Supp. 2d 174, 182 (S.D.N.Y. 2003). But the Supreme Court held that such allegations did not state a claim for relief because the facts reflected on the maps (along with the rest of the complaint) did not make the plaintiff's factual allegations plausible. Consistent with *Twombly*, the Eighth Circuit and other Courts of Appeals have affirmed Rule 12(b)(6) dismissal of ERISA breach of fiduciary duty

complaints that contain charts similar to those in the Complaint here, showing purported "comparator" funds with better performance. *See, e.g.*, *Matousek*, 51 F.4th at 281-82; *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1164, 1166 (6th Cir. 2022); *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1150 (10th Cir. 2023); *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1023 (9th Cir. 2025).

Indeed, the Supreme Court has emphasized that, even at the pleading stage, district courts "must give due regard to the range of reasonable judgments a fiduciary may make." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022). After all, "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous" and "elevates the possibility that a plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Pension Benefit Guar. Corp*, 712 F.3d at 719.

**B.     Plaintiff's Lawsuit Must Be Dismissed Due To Claim Splitting and/or the First-Filed Rule.**

The claim splitting doctrine provides that a party should not be able to bring claims arising from the operative facts across multiple lawsuits. *See, e.g., Kezhaya v. City of Belle Plaine, Minnesota*, 78 F.4th 1045, 1050 (8th Cir. 2023) (affirming dismissal of second action where the plaintiff attempted to maintain two actions against the defendant based on the same facts). The key elements are whether parties to the actions are the same and whether the claims arise from the same nucleus of operative fact. *Id.* Here, the Amended Complaint's imprudent investment and failure to monitor claims are brought on behalf of the Plan under ERISA Section 502(a)(2). *See* Am. Compl. ¶¶ 276-277; *see also Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142 n.9 (1985) (ERISA Section 502(a)(2) suits are "brought in a representative capacity on behalf of the plan"). There is another case pending in this court that was filed eight months before this case, and brought

6

behalf of the Plan under ERISA Section 502(a)(2) against the same Defendants also asserting imprudent investment and failure to monitor claims. *See Dell, et al. v. Stifel Financial Corp.*, No. 4:25-cv-00993, Dkt. 1, Compl. ¶¶ 137, 139, 147, Dkt. 26, Am. Compl. ¶¶ 147, 149, 157 (E.D. Mo.).  Because both actions are filed on behalf of the Plan, and both assert ERISA fiduciary breach claims for alleged imprudent investments and failure to monitor, the second case constitutes improper claim splitting and should be dismissed.

Alternatively, a second-filed action involving the same parties asserting claims that arise from the same facts, is subject to dismissal under the first-filed rule. See *Northwest Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993).[2] Those requirements are met here. Additionally, the first-filed rule considers the parties the same where, as here, a putative member of the class alleged is also a member of the class alleged in the first-filed case. *See Yancey v. State Farm Mut. Automobile Ins. Co.*, No. 23-377, 2023 WL 5019769 at *3 (E.D. Mo. Aug. 7, 2023) (claims covered by first-filed doctrine based on overlapping putative classes definitions); *Muhammad v. State Farm Indemnity Co.*, 719 F. Supp. 3d 397, 406-08 (D.N.J. 2024) (applying the first-filed rule where the proposed class members would all be members of a previously filed class action). Either way, this case should be dismissed because it is violative of the claim splitting and first-filed doctrines.

---

[2] Other district courts within the Eighth Circuit have applied this first-filed rule to class actions filed in the same court.  *See, e.g., Becerra v. Target Corp.*, No. 25-cv-535, 2025 WL 3022546 at *4 (D. Minn. Oct. 29, 2025); *Mosley v. Hydrostatic Oil Tools, Inc.*, No. 20-cv-1040, 2021 WL 3134917 at *2 (W.D. Ark. July 23, 2021); *Lewis v. Tiger Eye Pizza, LLC*, No. 20-cv-4017, 2020 WL 6298075 at *2 (W.D. Ark. Oct. 27, 2020).

C.      **Plaintiff Fails to State Any Plausible Imprudent Investment Claims.**

1.      **Plaintiff Admits She Does Not Definitively Know The Performance of The Challenged Funds So As To Be Able To Plausibly Allege <u>Underperformance.</u>**

Apart from claim splitting and the first-filed rule, Plaintiff's imprudent investment claim based only on underperformance fails for the threshold reason that she admits she does not actually know the performance of the American Century and Artisan funds at issue. In other words, she asks the Court to infer the Stifel fiduciaries engaged in an imprudent investment selection and monitoring based only on alleged comparisons of performance between the challenged funds and a handful of funds available in the market, but only speculates as to what the challenged funds' performance might have been in this Plan and how it might have tracked other investments. Am. Compl. ¶¶ 13, 32 (relying on performance data for Empower's variable annuities in other plans with American Century and Artisan separate accounts available in Morningstar).  Plaintiff states that if the performance information published by Morningstar regarding the American Century and Artisan funds is not the same as those in the Plan variable annuity contracts, that it is at least "a representative proxy." Am. Compl. ¶¶ 14, 33. Such speculation about "representative proxies" is wholly insufficient to warrant an inference of imprudence.

2.      **Plaintiff Fails to Allege Facts Demonstrating the Comparator Funds <u>Were Meaningful Benchmarks.</u>**

Plaintiff also has not alleged meaningful benchmarks for the American Century fund and Artisan fund. "The key to nudging an inference of imprudence from possible to plausible is providing a sound basis for comparison—a meaningful benchmark—not just alleging that costs are too high, or returns are too low." *Matousek*, 51 F.4th at 278 (quotations omitted); *see also Meiners*, 898 F.3d at 823 (plaintiff does not meet meaningful benchmark standard by "alleging

8

that cheaper alternative investments with *some* similarities exist in the marketplace."). Plaintiff's proffered comparators fall short of the Eighth Circuit's mandate.

Plaintiff suggests that because the American Century fund is a large cap growth fund, all the other large cap funds she identifies are proper comparators and necessarily have "similar aims, risks and potential rewards." Am. Compl. ¶¶ 110-12, 123-25, 136-38, 149-5. She suggests the same is true for the Artisan fund, a mid-cap fund, and all the other mid-cap funds she identifies. Am. Compl. ¶¶ 176-78, 188-90, 200-02, 212-13.[3] However, this sort of conclusory allegation cannot establish the proffered comparators are meaningful benchmarks. *See, e.g.*, *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1306 (D. Minn 2021) (disregarding conclusory allegations that comparator funds were meaningful benchmarks merely because they were of the same "investment type" and either passively or actively managed); *Batt v. 3M Co.*, No. 25-CV-3149, 2026 WL 674322, at *6-*7 (D. Minn. Mar. 10, 2026) (holding plaintiffs had not pled meaningful benchmarks where they just alleged challenged fund and comparators all had the same aim of become more conservative over time and made conclusory allegations about the comparators having the same risk-ratio, and being in the same Morningstar category); *Eibensteiner v. EssilorLuxottica USA, Inc.,* No. 25-2443, 2026 WL 1140895, at *3 (N.D. Tex. Apr. 27, 2026) (granting motion to dismiss imprudent investment claim where the alleged similarities "remain largely high level and are wanting for substantial factual detail concerning … specific risk exposure.").[4]

---

[3] In Table 2.c. discussing cumulative performance of Artisan comparators, Plaintiff without explanation drops the Invesco fund as a comparator and replaces it with the Baron Focused Growth fund.  Am. Compl. ¶ 273, Table 2.c. Plaintiff does not allege that the Baron fund has similar aims, risks and rewards to the Artisan fund, nor does she offer any factual allegations about it other than its cumulative and annualized performance in the period from March 2020 to April 2026.
[4] Plaintiff claims that *both* of the challenged funds and *all* of their proffered comparators shared the same aim of "long-term growth of capital," Am. Compl. ¶¶ 86, 87, 100, 112, 125, 138, 151, 167, 178, 190, 202,

9

Further examination demonstrates that these conclusory allegations about all the comparators having the same aims, risks and rewards as the challenged funds are just not true. For example, Plaintiff compares the American Century fund to the Vanguard Russell 1000 Growth Index fund and the Artisan fund to the Fidelity Mid-Cap Growth Index fund.  But Vanguard Russell 1000 Growth Index fund and Fidelity Mid-Cap Growth Index fund cannot serve as meaningful benchmarks because they are passively managed index funds, while the American Century fund and Artisan fund are actively managed funds. *See* Am. Compl.¶¶ 82-83 (American Century and Artisan are actively managed); Am. Compl. ¶ 159 ("The Vanguard Fund is a passively managed index fund."); Am. Compl. ¶ 213 ("The Fidelity Mid-Cap Fund is a passively managed index fund…").

The Eighth Circuit has held that actively managed funds and passively managed index funds are not appropriate comparators as: "[t]hey have *different* aims, *different* risks, and *different* potential rewards that cater to different investors." *Davis,* 960 F.3d at 485 (emphasis added). The *Davis* court thus rejected the plaintiffs' attempt to use passively managed index funds as a benchmark to show that one of the plan's actively managed investments had underperformed. *Id.* Such an "apples and oranges" comparison, the court said, "is not a way to show that one is better or worse than the other." *Id.* The court affirmed the district court's dismissal of the plaintiffs' imprudent-investment claim, holding that "it is not imprudent to provide options with differing features from which to choose, regardless of whether some perform better than others." *Id.*; *see also Schave v. CentraCare Health Sys.*, No. 22-1555, 2023 WL 1071606, at *6 (D. Minn. Jan. 27, 2023) (dismissing imprudent investment claims where alleged alternatives were passively managed funds that, in contrast to the actively managed funds at issue, necessarily had different

---

213, but this very generic aim cannot demonstrate the comparators are meaningful benchmarks as it could be said of *any* fund investing primarily in stock.

investment strategies that this could not warrant an inference of imprudence); *Parmer,* 518 F. Supp. 3d at 1306 (wholly passively managed funds could not be meaningful benchmarks for funds with blended strategy of primarily active management because they have different aims, risks and rewards); *Abel v. CMFG Life Ins. Co.*, No. 22-cv-449, 2024 WL 307489, at *5 (W.D. Wis. Jan. 26, 2024) (rejecting that actively managed funds could be meaningful benchmarks to passively managed funds as they "represent[ed] significantly different management styles, risks and potential returns"); *Sacerdote v. N.Y. Univ.*, 328 F. Supp. 3d 273, 314 n.114 (S.D.N.Y. 2018) ("ERISA does not mandate passive management (with lower fees) over active management."), *aff'd in relevant part*, 9 F.4th 95, 121 (2d Cir. 2021); *Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557, at *2 n.1 (9th Cir. Apr. 8, 2022) ("We agree with the district court that plaintiffs have not plausibly alleged that defendants breached the duty of prudence by failing to adequately consider passively managed mutual fund alternatives to the actively managed funds offered by the plan).[5] Accordingly, comparing the performance and fees of the American Century fund to these passively managed funds cannot lead to an inference of imprudence.

Moreover, Plaintiff's own allegations about the current composition of the challenged funds demonstrates that they do not follow the same investment strategy as the comparators, as they have very different allocations to international stocks and/or large-cap and mid-cap stocks. For example, Plaintiff alleges that in the most recent quarter, the American Century fund invested

---

[5] While Plaintiff also complains that the fees of the American Century fund are eight times that of the Vanguard index fund, and the fees of the Artisan fund are almost fourteen times of that of the Fidelity Mid-Cap index fund, and suggests this as evidence of imprudence, Am. Comp. ¶¶ 159, 222, she elsewhere recognizes that actively managed funds always have higher fees than passively managed index funds due to their active management, Am. Compl. ¶ 81, demonstrating that such comparison is improper. *See also Meiners*, 898 F.3d at 823 (plaintiffs cannot "dodge the requirement for a meaningful benchmark by merely finding a less expensive alternative fund or two with some similarity"); *Parmer*, 518 F. Supp. 3d at 1306 (no imprudence plausibly alleged by pointing to passively managed funds with higher fees than challenged actively managed funds).

90% in large-cap stocks and 1% in international stocks, but the Alger fund invested only 84% in large-cap stocks, and *14%* in international stocks. *See* Am. Compl. ¶¶ 104, 142. Plaintiff's other proffered comparators to the American Century fund also differ significantly in their allocation of international and/or large-cap stock. *See* Am. Compl. ¶ 116 (JPMorgan Chase fund –94% large cap stocks, 4% international stocks); *id*. ¶ 129 (Blue Chip fund – 90% large-cap stocks, 4.6% international stocks); *id*. ¶ 155 (Vanguard Russell 1000 fund - 99% large cap stocks, less than 1% international stocks).

So too, all the proffered comparators to the Artisan fund have significantly lower investments in international stock and/or mid-cap stock than the Artisan fund. *Compare* Am. Compl. ¶ 171 (80% of Artisan Fund's portfolio is invested in mid-cap stocks and 6.91% is invested in international stocks) *with id*. ¶ 182 (T. Rowe Price – 74% in mid-cap stocks and 1.51 in international stocks); *id*. ¶ 194 (Virtus Silvant – 77% mid-cap stocks and 1.32% in international stocks); *id*. ¶ 206 (Invesco – 74% mid-cap stocks and 5.88% in international stocks); *id*. ¶ 217 (Fidelity Mid-Cap Growth – 73% in mid-cap stock and less than 1% in international stocks). Such differences demonstrate that the comparator funds to American Century and Artisan do not, in fact, have the same aims, risks and rewards so as to be meaningful benchmarks. *See, e.g., Davis*, 960 F.3d at 486 (funds that had lower percentages in international stocks were not meaningful benchmarks); *Meiners*, 898 F.3d at 823 (the "fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [other funds] were an imprudent choice at the outset."); *Batt*, 2026 WL 674322, at *6 (concluding that TDF comparators were not meaningful benchmarks when they had different asset allocation among bonds and non-U.S. stocks).[6]

---

[6] In addition, Plaintiff's comparators to the Artisan fund had different investment strategies as they focused on completely different industry sectors.  As reflected in its most recent (1Q 2026) fund fact sheet, the

Plaintiff also attempts to compare performance of the American Century fund to the Russell 1000 Growth Index, and the performance of Artisan fund to the Russell Mid-Cap Growth Index. But neither of these indices can themselves be meaningful benchmarks to the actively managed funds here, particularly because the funds are variable annuities that offer income streams for life. As the Eighth Circuit explained in *Davis*: "we are not persuaded that the Russell 3000 Index, standing alone, is a 'meaningful benchmark' [for the variable annuity fund at issue] … After all, it is not a fund, much less an actively managed one, and it does not offer the security of an income stream for life." *Davis*, 960 F.3d at 485 n.4.

### 3. Insubstantial and Inconsistent Performance Differences Across Different Years Are Not Enough to State a Plausible Imprudence Claim.

Even if she could rely on the variable annuity accounts described in Morningstar as placeholders for the performance of the American Century and Artisan variable annuities in the Plan, and even if she had alleged meaningful benchmarks, Plaintiff's claim still fails because the performance differences she complains about are not substantial enough to allow any inference of imprudence. Plaintiff alleges that by the beginning of the class period in 2020 any prudent fiduciary would have removed the American Century and Artisan funds based on their performance. Am. Compl. ¶¶ 44, 232, 264, 275. However, for both the American Century fund and the Artisan fund, the differences she alleges in annualized performance from when they were first added to the Plan

---

Artisan fund's top sector for investment was Health Care, which reflected approximately 30% of its investments. Ex. 2 at p.1. In contrast, none of the Artison comparators had Health Care as their top industry focus. The most recent fund fact sheet for the T Rowe Price Diversified Mid-Cap Growth I fund showed that its top sector for investment was Industrial and Business Services (24% of its holdings). Ex. 4 at p.2. And the most recent fund fact sheet for the Virtus Silvant Mid-Cap Growth (1Q 2026) showed that its top sector for investment was also Industrial (at 29% of its holdings). Ex. 5. at p.2. The same was true in the most recent fund fact sheet for Fidelity Mid-Cap Growth Index fund, and Invesco Discovery Mid-Cap Growth, reflecting a top investment sector of Industrial (26% and 31% of their holdings, respectively). Ex. 6 at p. 2, Ex. 7 at p.1. Finally, the Baron Focused Growth Fund, most recent fund fact sheet reflect a top investment sector of Consumer Discretionary (at 36%). Ex. 8 at p. 1. These differences further confirm the inaptness of Plaintiff's comparison of these funds. *See, e.g., Davis*, 960 F.3d at 486.

13

on January 1, 2014, through February 29, 2020 (six years before the Complaint was filed, when Plaintiff says the funds should have been removed), was less than 2% against every single comparator fund. Am. Compl. ¶ 242, Table 1.a., ¶ 264 Table 2.a. Similarly, as to the indices Plaintiff hopes to rely on, for the same six-year period, the alleged average annualized underperformance of the American Century fund against the Russell 1000 Growth Index was only 0.69%, Am. Compl. ¶ 16, and for the Artisan fund, the alleged average annualized underperformance against the Russell Mid-Cap Growth Index during this period was only 0.86%. Am. Compl. ¶ 38.

Such small differences are not enough to warrant an inference of imprudence for retaining these funds in 2020. *See, e.g., Forman*, 563 F. Supp. 3d at 757, 764 (finding that where the challenged investments' "three-year annualized return[s]" were lower than the preferred funds returns by no more than "just over two percentage points" this was "simply too small to raise a plausible breach of the fiduciary duty claim"), *aff'd in relevant part*, 40 F.4th at 449; *Fritton v. Taylor Corp.*, No. 22-415, 2023 WL 5348834, at *8 (D. Minn Aug. 21, 2023) (alleged annualized underperformance of 1.10% over the previous 3-year period is not sufficiently substantial to support an inference of imprudence);[7] *Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 164 (E.D.N.Y. 2022) (finding that allegations of underperformance "on average by 2.33% on a three-year trailing basis and 2.57% on a rolling five-year trailing basis" were "not the type of substantial underperformance over a lengthy period that gives rise to a plausible inference that a prudent fiduciary would have removed these funds from the plan's menu of options"); *Bekker v. Neuberger Berman Grp. LLC*, No. 16 CV 6123, 2018 WL 4636841, at *2, *7 (S.D.N.Y. Sept. 27,

---

[7] *See also Fritton v. Taylor Corp.*, No. 22-415, Dkt. 50, Amended Complaint, ¶ 136 (D. Minn) (showing average annual return of challenged fund against comparators on a three, five and ten year basis).

2018) (ten-year annualized performance 4.45% lower (7.42% versus 2.97%) was insufficient to survive motion to dismiss).[8]

Plaintiff also offers comparator data for the putative class period from March 2020 through February 28, 2026 (as to the American Century fund)[9] and April 30, 2026 (as to the Artisan fund) – post hoc analysis which cannot, as a matter of law, support a claim that the Defendants acted imprudently by failing to remove the challenged funds *in early 2020*. Regardless, Plaintiff expressly admits that during this class period both the American Century fund and Artisan fund annual performance sometimes "outperformed [their] benchmarks and certain Comparator Funds." Am. Compl. ¶¶ 248, 269. Specifically, Plaintiff alleges that the American Century fund outperformed all Plaintiff's "comparator" funds and indices in 2021, two of Plaintiff's "comparators" in 2022, three of Plaintiff's "comparators" and indices in 2023, and one of Plaintiff's "comparators" in 2025. Am. Compl. ¶ 247, Table 1.b. Similarly, Plaintiff alleges that the Artisan Fund *outperformed* all of Plaintiff's "comparators" in 2020 (most by a substantial margin, in the year she claims the fund should have been removed from the line up), two of Plaintiff's "comparators" in 2023, and three of Plaintiff's "comparators" and indices in 2025. Am. Compl. ¶ 268, Table 2.b. While there are some years where these funds allegedly underperformed the purported comparators, "[t]hat the [challenged funds] were allegedly outperformed by some other [funds] at some points during a three- or five-year window, without more, does not suggest

---

[8] *See also, e.g., Enstrom v. SAS Inst.*, No. 5:24-CV-105, 2025 WL 685219, at *5 (E.D.N.C. Mar. 3, 2025) (stating that alleged underperformance between 1% and 4% "fails to state a plausible ERISA claim"); *Abel*, 2024 WL 307489, at *5 (underperformance during three and five year periods averaging between 1 and 3% insufficient, and noting district courts around the country have found "short-term differences in performance of between 1.14 to 4.4% immaterial"); *Cho v. Prudential Ins. Co. of Am.*, No. 19-19886, 2021 WL 4438186, at *9 (D.N.J. Sept. 27, 2021) (five year underperformance ranging from .07% to 3.7% lower and ten-year underperformance from 1.19% to 2.86% lower insufficiently substantial).

[9] The American Century fund was removed from the Plan's Empower variable annuity in March 2026. Am. Compl. ¶ 29.

15

that offering the [challenged funds] fell outside the range of reasonable judgments that fiduciaries may make." *Hall v. Cap. One Fin. Corp.*, No. 22-00857, 2023 WL 2333304, at *6 (E.D. Va. Mar. 1, 2023); *see also Abel*, 2024 WL 307489, at *5 (reasoning that average underperformance between 1 and 3%, with overperformance in some specific years, failed to state a claim for breach of fiduciary duty).[10]

Despite the alleged variable performance of the funds against Plaintiff's cherry-picked comparators in the 2020 to January 2026 period, and their significant outperformance in some years, Plaintiff suggests that the cumulative underperformance during this period should also have alerted the Plan that these funds were imprudent. However, because a fiduciary is confronted with decisions in real-time, a plaintiff "cannot rely, after the fact, on the magnitude of the decrease" of an investment's value, or other facts known only with the luxury of hindsight. *Pension Benefit Guar. Corp*, 712 F.3d at 718 (quotation omitted) (collecting cases); *see also Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 918 (8th Cir. 1994) ("the prudent person standard is not concerned with results; rather, it is a test of how the fiduciary acted viewed from the perspective of the time of the [challenged] decision rather than from the vantage point of hindsight.") (internal quotations omitted); *Tussey v. ABB, Inc.*, 746 F.3d 327, 338 (8th Cir. 2014) (vacating district court judgment on claim, where "the district court's opinion shows clear signs of hindsight influence regarding the market for target-date funds at the time of the redesign and the investment options'

---

[10] With respect to the comparisons of the challenged funds to the indices during this class period, the alleged average annualized underperformance of the American Century fund against the Russell 1000 Growth Index was only 2.3% across the six-year period from March 1, 2020 to January 31, 2026. Am. Compl. ¶ 25. For the Artisan fund, the alleged average annualized underperformance against the Russell Mid-Cap Growth Index was only an average of 1.26% from March 1, 2020 to January 31, 2026. Am. Compl.¶ 39. And the alleged annualized underperformance of the challenged funds against most of the comparator funds in the period from 2020 to 2026 was 2.46% or less. Am. Compl. ¶ 252, Table 1.c.; ¶ 273, Table 2.c. As discussed *supra*, this level of underperformance is insufficient for an inference of imprudence.

subsequent performance…. The Plan administrator deserves discretion to the extent its *ex ante* investment choices were reasonable given what it knew at the time.").

Here, in Tables 1.b. and 2.b., Plaintiff alleges that the funds overperformed in some years and underperformed in others, and the cumulative underperformance columns only reflect cumulative numbers *as of 2026*. Such a hindsight analysis of cumulative performance cannot warrant an inference of imprudence. *See, e.g., Patterson v. Morgan Stanley*, No. 16-6568, 2019 WL 4934834, at *10 (S.D.N.Y. Oct. 7, 2019) (no inference of imprudence warranted by "Plaintiffs' comparison of the 'cumulative performance' of the Mid Cap Fund to its benchmark and the two alleged comparator funds" as of 2016, because it was an improper hindsight analysis relying on "numbers not alleged to have been available to Defendants … when the class period began" and cumulative data as of 2016 could not "demonstrate imprudence with regard to breaches alleged to have occurred earlier."); *cf. also Fritton*, 2023 WL 5348834, at *8 (noting that hindsight based analysis could not support imprudence claim).

Moreover, Plaintiff does not provide any information on long-term performance (more than six years) against *any* comparator fund. "[A] prudent fiduciary necessarily must factor long-term outcomes into the investment calculus for retirement funds, since they are meant to be managed over decades." *Antoine v. Marsh & McLennan Cos. Inc.*, No. 22-6637, 2023 WL 6386005, at *11 (S.D.N.Y. Sept. 30, 2023). Here, Plaintiff has not alleged any annualized underperformance against a comparator fund on long-term basis sufficient to support any inference of imprudence. *See, e.g., Williams v. Centene Corp.*, No. 22-00216, 2023 WL 2755544, at *5 (E.D. Mo. Mar. 31, 2023) (where plaintiffs' comparisons establish only that the marginally cheaper, comparators funds performed better than the plan's selected funds at the three- and five- year marks this was insufficient to establish an inference of imprudence); *Riley v. Olin Corp.*, No. 21-01328, 2022 WL

17

2208953, at *7 (E.D. Mo. June 21, 2022) (same); *Cho*, 2021 WL 4438186, at *9 (dismissing imprudent investment claims based on five-year snapshots, a "fairly short" period that also relies on hindsight); *Beldock v. Microsoft Corp.*, No. 22-1082, 2023 WL 3058016, at *2-3 (W.D. Wash. Apr. 24, 2023) (three- and five-year underperformance not enough); *Hall*, 2023 WL 2333304, at *6 ("That the [challenged funds] were allegedly outperformed by some other [funds] at some points during a three- or five-year window, without more, does not suggest that offering the [challenged funds] fell outside the range of reasonable judgments that fiduciaries may make."); *Bracalente v. Cisco Sys., Inc.*, No. 5:22-cv-04417, 2023 WL 5184138, at *4 (N.D. Cal. Aug. 11, 2023) (three- and five-year underperformance not enough); *CommonSpirit Health*, 37 F.4th at 1166 (another fund with five years better performance not enough).[11]

**D.      Plaintiff Fails to State Any Plausible Failure-To-Monitor Claims.**

In Count II, Plaintiff alleges that each Defendant breached its duty to monitor other fiduciaries. This claim fails because it is wholly derivative of Plaintiff's principal claim for fiduciary breach in Count I, which fails to state a claim for the reasons set forth above. *See, e.g.*, *Barrett*, 112 F.4th at 1140 ("Without 'a plausible inference that the decision-making process itself was flawed,' this derivative [failure to monitor] claim ends in the same place:  dismissal") (internal citations omitted); *Allen v. Wells Fargo & Co.*, 967 F.3d 767, 776-77 (8th Cir. 2020) (same).

**IV.     CONCLUSION**

For the above reasons, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety.

---

[11] Plaintiff does provide long term annualized underperformance of the Artisan fund against an index, but again, the difference is so small that it cannot warrant a plausible inference of imprudence.  Am. Compl. ¶ 34 (average annualized underperformance of Artisan fund against Russell Mid-Cap Growth was only an average of 1.1% since its introduction in 2014).

Respectfully submitted,

Dated:  June 15, 2026

*s/ Melissa D. Hill*
Melissa D. Hill (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS, LLP
101 Park Avenue
New York, NY 10178-0060
Tel:  (212) 309-6318
Fax:  (212) 309-6001
melissa.hill@morganlewis.com

Winthrop B. Reed, III, MO Bar #42840MO
LEWIS RICE LLC
600 Washington Ave., Suite 2500
St. Louis, MO 63101
Tel:  (314) 444-7617
wreed@lewisrice.com

Stephanie R. Reiss (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, 32nd Floor
Pittsburgh, PA  15219
Tel: (412) 560-3378
Fax: (412) 560-7001
stephanie.reiss@morganlewis.com

*Counsel for Stifel Financial Corp.,*
*The Board of Directors of Stifel Financial Corp.,*
*and The Stifel Investment Committee*